STATE OF IOWA, Appellee, v. STANLEY M. KASTER, Appellant.

No. 46599.

OCTOBER 17, 1944.

J. P. Murphy, of Sumner, for appellant.

John M. Rankin, Attorney General, and Wm. P. McFarlin, Assistant Attorney General, for appellee.

PER CURIAM.—Defendant, Stanley M. Kaster, was indicted by the grand jury of Bremer County, Iowa, charged with the crime of having murdered Glenn R. Winchell in said county on September 25, 1943.

He entered a plea of not guilty but upon trial was convicted of murder in the first degree and sentenced to death. He has appealed to this court. There was no argument filed herein by either party and the case comes to us on a clerk's transcript, together with a transcript of the evidence furnished by the official court reporter.

We have gone over the transcript of the record and the evidence with care. The transcript reveals that all of the proceedings were carefully made of record; that the rights of the defendant were scrupulously preserved; that he was repre-

sented by able counsel, and every opportunity was afforded him to defend against the charge. The instructions of the court show extreme care in preparation, and fully, fairly, and correctly set forth to the jury the law and the rules for their guidance in deliberating upon and arriving at a verdict. The lower court found defendant's motion to set aside the judgment and to grant a new trial was without merit. We have carefully examined the motion and the different grounds set forth therein and are of the opinion that the lower court did not err in overruling the same.

We have gone over the evidence carefully and will set forth a short résumé thereof, dealing principally with the crime and the identity of the defendant. We do this because of the nature of the crime charged and the seriousness of the consequences to the defendant by reason of his conviction.

The transcript of the evidence is so voluminous that it would serve no good or useful purpose to set out more than a brief statement of the parts dealing with the actual commission of the crime, the identity of the perpetrator thereof, his apprehension, and his statement and admissions following that event.

The defendant is a man thirty-four years old and so far as the record shows was a stranger in the community where the crime was committed.

On September 25, 1943, and for some years prior thereto, Glenn Winchell, the deceased, had been employed by the city of Waverly, Iowa, as a guard or watchman at its electric power plant in that city. He was a regular officer, wore a uniform, a policeman's badge, and carried a revolver in a holster fastened to his belt. At that time he was on duty during the night and his duties required him to go various places at or about the plant, and in so doing he carried with him what is known as a time clock. About ten p. m. on that date, while on duty at a point near the light plant, he was shot and died within a few minutes. The shot which killed him came from a 12-gauge shotgun loaded with buckshot. The main charge struck him full in the face, near the mouth, with some of the shot penetrating his brain, others his throat and neck, one severing the jugular vein, and others striking him in the arm. There were at least nine buckshot wounds in his face and arm. Sev-

eral shotgun wads were found in the neck wound. There were no powder marks on his face. When shot he fell in the parking between the street and the sidewalk and near a large tree. He died in a few minutes without regaining consciousness. When found he was lying on his side with the gun and the holster under him. The gun was loaded but contained no empty shells. Also, the time clock was found by the side of his body.

A Mr. Zahn, who lived a short distance from the scene of the shooting, was approaching his home about the time the shooting occurred. He was a witness to the actual shooting. As he was about to enter his home he heard a voice call, "Don't shoot," and saw Glenn Winchell some seventy or seventy-five feet away standing at or near the sidewalk, while another person holding a shotgun was some fifteen or twenty feet farther away. Winchell had his hands raised as if to protect his face and was trying to get behind a large tree. The witness started in that direction and had traveled some fifteen or twenty feet closer when Winchell called out again, "Don't shoot, don't shoot." Witness testified that the holder of the gun then raised it to his shoulder and fired it directly into Winchell's face at a point when they were thirty to forty feet apart. Winchell dropped to the ground and when picked up was lying between the sidewalk and the tree. When Winchell fell his assailant, still carrying the gun, ran a short distance to a Studebaker coupé which was parked near by. He threw the gun into it, entered, and backed it up rapidly, narrowly missing several other cars then and there parked or passing. He then drove to the intersection, where the car either stalled or stopped for a short interval of possibly a minute. In the meantime Zahn gave the alarm by calling out that Winchell had been shot, and for someone to stop the car and get the number. Several persons close at hand observed the car, its driver, and its number, 7-32. When driven away the lights of the Studebaker were not turned on and when last seen several blocks away its lights were not on. It was being driven rapidly in a direction out of the city.

Several witnesses sitting in an automobile parked close by where the Studebaker had been parked before the shooting

identified the defendant as the driver as it backed out and drove away immediately following the shooting. A Mr. Kammerer, a teacher in the Waverly high school, together with his wife, was near the intersection where the Studebaker car stopped. They heard the call to get the number and stepped back from the street in order to avoid being run over but got the number and observed the driver of the car. Mr. Kammerer positively identified the defendant as the driver of the car and stated that he had taken particular notice because of the calling of Mr. Zahn. Mrs. Kammerer identified the car and stated that in her opinion the defendant was the driver.

A short time before the shooting the Studebaker car, with defendant alone therein and driving, had been seen in the vicinity of the light plant and had passed that way at least three times. Witnesses observed that the driver seemed to be looking in the direction of the light plant. This happened just before Winchell was shot and while he was making his rounds of the property guarded.

Early on the morning of September 27, 1943, the Studebaker coupé was found off the road and in a ditch on a highway not far from Janesville, Iowa. The defendant was in the Studebaker and he sought to obtain help from a witness to get out of the ditch. At that time there was no rear number on the ditched car. Later, on the same day, this Studebaker car was found in a wooded tract near a shack off the highway about two miles from the town of Janesville. In the shack was a stove with a fire burning and there was evidence that it had been occupied shortly before. The car then carried a license No. 7-23120. The officers examined the car and found a number of personal effects belonging to the defendant, who about that time was seen in the woods near the shack armed with a shotgun. Among the things found in the car were a revolver, some shotgun shells, and a "jump wire" which could be used to start automobiles with ignition turned off. The officers took possession of the car but the defendant did not return to it. Later, on October 3, 1943, following word that defendant had been seen near a cabin close to Clear Lake, the officers went to the place and surrounded the cabin. The cabin belonged to some relatives of the defendant. They

advised that the defendant was in the cabin but would not come out. He was called upon by the officers to surrender and upon his refusal a gas grenade was thrown into the cabin. As he came out he began to shoot and the shooting became general. He was armed with a shotgun and fired at least four shots, all loaded with buckshot, some of which struck the car belonging to the sheriff and penetrated the windshield and fenders. The defendant was wounded in the heel but escaped in the darkness. The next morning he was discovered hiding in the trunk of an automobile some distance from the cabin and when found he had a loaded shotgun with him. The shells which were unfired were loaded with buckshot. The defendant was taken to the hospital at Mason City, Iowa, where his wound was dressed, and he was then taken to Waverly and kept in jail until the trial. While on the way to Waverly and while confined in jail defendant admitted that he was the one who did the shooting and stated that he did so when he was trying to take the gun from Winchell; that he wanted the gun; that such guns were hard to buy and he made up his mind that he would take it by force. On October 4, 1943, the defendant signed the following statement which was introduced in evidence:

"I, Stanley M. Kaster, state that on the night of September 25, 1943, I drove to Waverly, Iowa, in a 1941 Studebaker coupe bearing the license number of 7-32. I drove around the streets looking for a parking space and finally found one on First Avenue north east. A short time after I parked the car I noticed an officer coming down the street heading east. I decided to get his gun. I got out of the car, took my shotgun; while standing behind the officer I told him I wanted his gun and told him to unbuckle his belt and drop the gun. He said, 'Don't shoot, Don't shoot,' and started backing up. He reached for his gun but never pulled it. I told him to leave it alone and leave his hands off of it. He started to get behind a tree and I let him have it. I mean that I shot him then. I fired just one shot. I don't know for sure that I hit him. I did not get his gun because the people started coming in from all directions. I went back to my car, backed up to the inter-

section and went south and made my escape from Waverly. I took a man's life and I will offer mine for it. If I do not get the death penalty I wish to withdraw the entire statement. I have read the foregoing statement and know the same to be true as I believe and I gave it of my own free will without any threats of any leniency." Signed, Kaster, S. M. (the initials following the name Kaster).

The evidence shows that this statement was voluntarily made following the advice from officers that whatever he said would be used against him and also that he could have an attorney if he desired one. The defendant stated that he did not care to have an attorney and that he realized what he said would be used against him.

The defendant did not offer any evidence in his own behalf. Following the taking of the testimony, and when both sides had rested, the defendant made a motion for a directed verdict, which was overruled, and thereupon the court instructed the jury in writing. No exceptions were taken to any of the instructions given.

We have gone over the instructions carefully and find that they set forth correctly, fairly, and impartially the law to be applied in the consideration of the evidence. We find no error in such instructions. We have also gone over the transcript showing the proceedings taken and we find that they were regular in all respects. The defendant was charged by the grand jury with the crime of murder. He had the advice of able counsel and also had witnesses summoned at the expense of the State. The record shows that the trial court was very careful to protect the rights of the defendant during the progress of the trial. There were no errors in the court proceedings.

The crime was an atrocious one, wherein an officer in the performance of his duty was shot down almost without warning and with no chance to defend himself. The motive for the crime was to secure possession of the officer's revolver. In the face of an entreaty or supplication by the deceased that the defendant refrain from shooting, the defendant fired a shotgun loaded with buckshot almost point-blank into the face of

a man who had raised his hands and was making no attempt to inflict harm upon the defendant but was seeking to avoid being injured. There is no showing or claim of anything bordering upon self-defense in this case. The evidence is unquestioned that the defendant committed a cruel, cold-blooded, unprovoked, and deliberate murder; that he did so with deliberation and premeditation, and with a specific intent to kill, with a motive to take a human life if thwarted in his purpose to rob. No excuse or mitigating circumstance has been shown.

Summed up, it was a crime committed in cold blood and with all of the ingredients and elements of murder in the first degree.

It is our conclusion that there is no error in the record, that the court was right in submitting the case to the jury, and that the verdict of the jury was justified under the evidence and the instructions. While the consequences are severe so far as the defendant is concerned, yet, under the circumstances, we feel them fully justified. In the light of the record this court will not interfere with the verdict of the jury or the judgment of the court pronounced thereon. The case is affirmed.— Affirmed.